DICK & REUTEMAN COMPANY, Trustee, Appellant, vs. HUNHOLZ and others, Respondents.

*December 4, 1933—January 9, 1934.*

500

502

*H. A. Sawyer* of Milwaukee, for the appellant.

For the respondents there was a brief by *Churchill, Bennett, Churchill & Davis* of Milwaukee, and oral argument by *W. H. Churchill.*

FOWLER, J. The respondent Juneau Park Apartment Corporation claims that the only ground on which a receiver may be appointed in a suit to foreclose a mortgage is that the mortgagor or owner of the mortgaged premises has committed waste; that waste may consist of permitting property to fall into disrepair, or in failure to pay interest or taxes, but that waste of the latter kind does not warrant appointment of a receiver unless the amount of the defaults in that respect exceed the amount of payments by which the principal debt has been reduced; that the evidence in the instant case shows that the owner of the fee has not permitted the premises to fall into disrepair, and that the amount of the principal payments, at the time of the hearing of the motion, exceeded the amount of the defaults in payment of interest

and taxes by about $18,000; that therefore there has been no waste such as to justify the appointment of, and the trial court was without authority to appoint, a receiver. The decisions of this court in *Grether v. Nick,* 193 Wis. 503, 213 N. W. 304, 215 N. W. 571, and *Crosby v. Keilman,* 206 Wis. 252, 239 N. W. 431, are relied upon as supporting this view. Apparently the trial judge in denying the motion for a receiver was of this view and interpreted the decisions as compelling denial of the motions.

We consider that respondents' counsel take an altogether too narrow a view of the decisions cited. The propositions decided in the *Grether Case* were that a receiver will be appointed in a foreclosure case because of or "in certain cases to prevent" waste; that non-payment of interest and taxes when due constitutes waste; and that, while a pledge of rents and profits does not create a lien upon them until the mortgagee obtains possession, "all the authorities agree that a pledge of rents and profits vests in the mortgagee a *right* thereto which equity will recognize in a proper manner;" and that "the only way in which it (the right) can be enforced in this state is by the appointment of a receiver under circumstances justifying the procedure." We see no reason to retract any of the above statements, or to cite any authority or reason therefor beyond those given in the opinion. The propositions first above stated were carefully considered in the first instance and the effect of a pledge of rents and profits was carefully considered upon a motion for rehearing, after presentation of briefs upon that subject at the request of the court.

The decision in the *Crosby Case* recognized the rules laid down in the *Grether Case* and refused to recede therefrom. From that point the decision went on to state in substance that a receiver would not be appointed in every case of waste by non-payment of interest and taxes, and that if the payments on the principal so greatly exceeded the defaults in

these respects as to make the appointment of a receiver inequitable, a receiver ought not to be and in the instant case should not have been appointed. But there was no intention to declare, and there is no basis for the contention, that where waste threatens to such an extent as to lessen the security originally given the mortgagee, the court is without authority to appoint a receiver to take possession of the mortgaged premises and collect the rents and apply them to reduction of the mortgage debt. What constitutes such waste as to authorize the appointment of a receiver is not to be determined by any such rule of thumb as that defaults in payments of interest, taxes, and insurance must, at the time of the hearing, exceed the amount by which the principal of the debt has been reduced by payments. Trial courts should exercise a sound discretion in passing upon applications. It is to be borne in mind that a receiver may be appointed not only because waste has been committed to the extent of diminishing the security originally given, but may be appointed to prevent future waste that is likely to be committed to such an extent as will diminish that security. On motion prior to judgment it may and should be considered that time will elapse before final judgment will be rendered and that a year will elapse after judgment is rendered before sale of the premises may be had upon the judgment, and that the amount of the delinquencies in payment of interest and taxes that are likely to occur in the meantime may be so great as to diminish the original security.

It appears in the instant case that the taxes on the mortgaged premises are nearly $5,000 per year and that the semiannual interest payments are slightly over $4,000 and another year's taxes and three more interest payments will fall due before the sale of the premises can be had in the ordinary course of litigation in Milwaukee county. These items, with accrued interest on interest and taxes, will in all probability bring the amount of the defaulted payments of

interest and taxes that will accrue up to the time of sale to an amount in excess of the payments on the principal debt. Moreover, a tax deed may issue on the sale of the mortgaged premises for the 1931 tax in May, 1935, and it is quite likely that sale of the property pursuant to the judgment will not take place until after that time. The plaintiff trustee has no funds to redeem the premises from tax sale. It is in no position to procure them except by appeal to individual bondholders. It cannot compel compliance to requests for contributions and such an appeal would most likely prove futile. The trustee is not under positive duty to resort to such a step. Thus the entire property is likely to be lost to the bondholders unless a receiver is appointed.

We consider that the denial of the motion to appoint a receiver was due to a misconception by the learned circuit judge of the effect of the *Grether* and *Crosby Cases, supra*. This seems apparent from the recital in the order that "such waste did not reduce the value of the mortgaged premises in excess of said amount by which the mortgage debt has been reduced, and therefore the facts do not warrant the appointment of a receiver, and the failure of the owner to apply the rents and profits is immaterial." If the order was based upon an erroneous view of the law, it must be reversed. And if it was not so based it must be reversed because it was not based on the exercise of a sound discretion.

It may further be said that holders of bonds secured by a trust deed are hardly in the position of a mortgagee who loans his money on the strength of the security of mortgaged premises. They are numerous and scattered. The interest of no single holder is ordinarily sufficient to warrant him in redeeming from tax sales, if he is financially able to do so, which ordinarily he is not. Hotels, apartment houses, and the like are too often constructed wholly out of the proceeds of bond sales, part of which have gone to promoters and

bond salesmen for services, so that the bonded debt is often materially more than the cost of the completed premises. If we assume that the value of the property equals its cost, the mortgaged premises in such cases are to begin with inadequate security for the bonded debt, and the purchaser of a bond is in a far less favorable position to judge of the value of the security than is a mortgagee who loans his money thereon, such as was the mortgagee in the *Crosby Case, supra.* Individual bondholders are not in a position to buy in the premises at foreclosure sale and thus procure the property originally accepted as security for the mortgage debt as is the ordinary mortgagee. Thus equities may exist in favor of bondholders under a trust deed asking for a receiver that do not arise in favor of a holder of an ordinary mortgage. Mortgagors and owners of the fee are in a court of equity, in foreclosure suits, and equities may exist other than those involved in mere existing waste. It may well be, even in the case of an individual mortgagee, that the circumstances will justify the appointment of a receiver to collect rents and apply them to payment of taxes. If the mortgagee is in such financial situation as to be unable to pay defaulted taxes, a receiver may properly be appointed although payments have been made upon the principal debt far in excess of the amount of delinquent interest and taxes. The municipal authorities have an interest in the collection of taxes, and are entitled to have them paid. The mortgagor has agreed to pay them. If he has also agreed that the rents may be applied to their payment in case of his default, he cannot complain if he is held to his agreements in the public interest even though as between himself and the mortgagee the mortgagee's security is not diminished or threatened by reason of non-payment of taxes. Each case must stand on its own facts.

The respondents claim that the order made in the suit to foreclose the second mortgage denying the motion for a

receiver is *res judicata.* Passing the fact that the plaintiff herein had no interest whatever in that action and the issues therein were different from those in the instant case, it is manifest that the situation materially changed between the time of the entry of that order and the hearing of the motion herein. September and March interest payments and the 1932 taxes became delinquent in the meantime. Another year would elapse before sale of the premises in ordinary course would take place and the right to a tax deed on the certificate issued on the 1931 tax sale quite likely would accrue in the meantime. The facts involved in the two hearings were materially different. The first order was for this reason not *res judicata.*

*By the Court.*—The order of the circuit court is reversed, with directions to enter an order appointing a receiver with suitable provision requiring the Juneau Park Apartment Corporation to account to the receiver for all rentals received since the date of the order appealed from.

On March 6, 1934, the following memorandum was filed:

PER CURIAM. Upon motions of respondents and appellant to amend the mandate entered herein:

*It is ordered* that the mandate is amended to read: The order of the circuit court is reversed, with directions to enter an order appointing a receiver; requiring the Juneau Park Apartment Corporation to account to the court for all rentals received since the date of the order appealed from and to pay over to the receiver to apply upon unpaid taxes the amount received less disbursements for necessary operating expenses; and requiring the John Hunholz Company as purchaser of the mortgaged premises since entry of the order and its assigns likewise to account and pay over.