DICK & REUTEMAN COMPANY, Trustee, Appellant, vs. JEM REALTY COMPANY, imp., Respondent.

*May 24—September 14, 1937.*

For the appellant there were briefs by *Sawyer & Reilly,* attorneys, and *Lecher, Michael, Whyte & Spohn* of counsel, and oral argument by *Malcolm K. Whyte* and *Herman E. Friedrich,* all of Milwaukee.

For the respondent there were briefs by *B. F. Saltzstein,* attorney, and *Hersh & Morse* of counsel, all of Milwaukee, and oral argument by *Mr. Saltzstein* and *Mr. Emil Hersh.*

The following opinion was filed June 21, 1937:

WICKHEM, J. The mortgaged premises consist of a three-story-and-basement apartment building containing thirty-six

separate apartments. No part of the premises constituted a homestead, and the premises were operated by the defendant mortgagor as a business enterprise. The trust deed was dated January 18, 1929, and secured a bond issue aggregating $90,000. The deed provided for retirement of principal in semiannual instalments of $2,000 from June 18, 1931, to December 18, 1934; semiannual instalments of $3,000 from that date to June 18, 1937; semiannual instalments of $3,500 from that date to December 18, 1938; and the payment of $45,000 on June 18, 1939. Only the first two semiannual payments of principal were made. The interest and taxes were not in default, but because of failure to meet the instalments of principal, plaintiff trustee on January 13, 1936, declared the principal sum due in accordance with the provisions of the trust deed relative to defaults. At this time the mortgagor was in default on eight semiannual payments of principal aggregating $21,500. Foreclosure action was instituted April 13, 1936, and an application for the appointment of a receiver to obtain possession and impound the rents and profits was served with the original papers. Judgment of foreclosure was entered on July 14, 1936, for the full sum due and owing, but the receivership motion was continued from time to time and finally denied on December 28, 1936. The trust deed provided that the mortgagor,—

"(a) 'Does hereby sell, grant, bargain, and convey' the real estate therein described 'and all the rents, issues and profits to be had or derived therefrom.'

"(b) 'In case of such default said party of the second part, or its successors or assigns in trust, is hereby authorized and empowered to go into immediate possession of said mortgaged premises, and collect the rents, issues and profits and after deducting the necessary expenses to apply the net proceeds upon said bonds and mortgage indebtedness. . . .' "

Upon the hearing, the testimony as to value was in conflict, plaintiff's evidence being to the effect that the property was not worth to exceed $85,000, and the defendants' wit-

nesses putting the value at from $110,000 to $137,000. Its assessed valuation was $59,500.

The trial court denied the application because it appeared that the fair value of the premises was in excess of the amount of the mortgaged debt, interest, and costs, and that payment of the current taxes having been made, and the interest not being in default, there was no waste which could form the basis for the appointment of a receiver.

The argument of the plaintiff may be briefly stated as follows: (1) The language of the mortgage pledging rents and profits is clear and unambiguous. (2) Sec. 268.16, Stats., provides as follows for the appointment of a receiver in a mortgage foreclosure:

"A receiver may be appointed: (1) On the application of either party, when he establishes an apparent right to or interest in property which is the subject of the action and which is in the possession of an adverse party, and the property *or its rents and profits* are in danger of being lost or materially impaired."

Under this statute plaintiff particularly relies upon the italicized portion and claims that the order of the court permits the use by the mortgagor of $5,500 to $6,000 of pledged profits, which the mortgagor is not proposing to apply to the payments on principal which are in default. (3) The security interest in rents and profits stipulated for in a mortgage of commercial property is one which will be enforced in a court of equity. (4) Such a stipulation, while not *ipso facto* an assignment, so operates upon demand or its equivalent. (5) Receivership is the proper method of obtaining possession on failure to recognize the demand. (6) To permit the rental income to be appropriated to the mortgagor is contrary to commercial practice and ethics, and contrary to established principles of law.

Defendant asserts: (a) That upon an application for the appointment of a receiver, the effect and not the language of

the mortgage is in issue; (b) that the statute does not make mandatory the appointment of a receiver; (c) that the right to a receiver is to be determined on ordinary equitable grounds notwithstanding an hypothecation of rents and profits; and (d) that the order being discretionary, it should be affirmed, there having been no abuse of discretion.

This appeal raises a question as to the nature of the rights of a mortgagee whose mortgage gives him a security interest in the rents and profits of the real estate described by the mortgage. An examination of the authorities in this jurisdiction indicates that a mortgagee is not entitled to the possession of the property merely because of a clause hypothecating rents and profits, but must enforce his rights by a petition for the appointment of a receiver. When such an application is made, it is to be disposed of in accordance with the principles of equity applicable to receivership and, as will hereafter be seen, is not a mere action for specific performance. This does not mean, however, that a pledge of the rents and profits has no effect or bearing upon the right to a receivership. In *Grether v. Nick,* 193 Wis. 503, 512, 213 N. W. 304, 215 N. W. 571, it was said:

". . . It is plain in this jurisdiction that under a mortgage pledging rents and profits the benefit of such rents and profits does not inure to the mortgagee until possession has passed from the mortgagor. Under the principles established here, the mortgagor may not be deprived of possession except under circumstances discussed in the former opinion. In order to accomplish such dispossession the mortgagee must invoke the aid of a court of equity. Upon the application of the mortgagee the court may appoint a receiver to take possession of the premises to prevent waste and to collect the rents and profits."

In the same opinion it was pointed out that the appointment of a receiver in the first instance can only be justified for the purpose of preventing waste, and it was there said that a review of the cases in this court fails to reveal any case

where a receiver has been appointed in foreclosure proceedings in the absence of circumstances amounting to waste. In *First Wisconsin Trust Co. v. Adams,* 218 Wis. 406, 261 N. W. 16, it was said, respecting a mortgage containing an agreement with reference to rents and profits similar to that here involved : (1) That the mortgagor's right to possession existed until default; (2) that the commencement of the action of foreclosure was the equivalent of a demand for rents and profits and that the mortgagors give up possession; (3) that the rights and liabilities of the mortgagors were limited by the provisions of the contract relating to default; (4) that as between the mortgagors and mortgagee, an equitable assignment of rents arose by virtue of the demand by the mortgagee for possession; and (5) that from and after the commencement of the foreclosure action, the mortgagor is to all intents and purposes a receiver liable to account for the rents and profits. In the *Adams Case,* the question was whether the receiver, concerning the propriety of whose appointment no question was raised, was entitled to rents and profits as of the time of his appointment or as of the time of the commencement of the foreclosure proceedings, and it was held that he was so entitled from and after the commencement of the action. As was stated in *Grether v. Nick, supra,* the foundation for the appointment of a receiver in foreclosure proceedings is waste of the security. It was there pointed out that a mere inadequacy of the security or insolvency of the mortgagor were not sufficient for the reason that the mortgagee had taken these matters into account when the loan was made, but that the principle was that a mortgagee was entitled in equity and justice to be protected against acts of the mortgagor impairing the security by waste. It was contemplated by sec. 268.16, Stats., that the function of a receivership was to protect the security and that rents and profits may be a proper subject for judicial protection of this type. This does not mean, according to

the cases, that wherever waste occurs there must inevitably be a receivership, if such is demanded, but it plainly does mean that waste is a prerequisite. Circumstances which have heretofore been held to affect the discretion of the court in declining to appoint a receiver when there has been waste are: (1) That the mortgagor has balanced whatever waste he has committed by payments upon the principal sum due so that the net results of his acts are such as not to impair the security. *Crosby v. Keilman,* 206 Wis. 252, 239 N. W. 431. (2) Where the property involved is a homestead, and the dispossession of the mortgagor would create great hardship upon him without corresponding benefit to the mortgagee. In connection with this see *Crosby v. Keilman, supra.*

In summary, therefore, it may be said that where there is waste, a receiver may be appointed in the discretion of the court of equity; that unless there is some counterbalancing equity, it is an abuse of discretion not to appoint a receiver where waste has been committed. It is well established that a failure to pay interest or taxes constitutes waste because it results either in an increase of the debt or an impairment of the security by subjecting it to liens superior to that of the mortgagee. *Dick & Reuteman Co. v. Hunholz,* 213 Wis. 499, 252 N. W. 180; *Grether v. Nick, supra; Scharf v. Hartung,* 217 Wis. 500, 259 N. W. 257. In view of this, it must be held, where rents and profits are secured by the mortgage, that the conversion to his own use of the rents and profits by a mortgagor after the commencement of foreclosure proceedings constitutes a waste of the mortgagee's security. The security in the case of such mortgages is not merely the land and improvements, but the rents and profits. In the *Adams Case* it was held that from and after the institution of foreclosure proceedings, the mortgagor had the same duty to account for such rents and profits as a receiver would have. For the mortgagor to use these for his own purposes after foreclosure and to neglect to apply them to the

payment of interest, taxes, or overdue instalments of principal, constitutes the impairment of a fund in which the mortgagee has a security interest by his contract. Thus, the mortgagee, who has a security interest in rents and profits, and who shows to the court that these are not being applied to the payment of interest, principal, and taxes, shows waste of the security contracted for, and in the absence of some circumstance rendering a receivership inequitable or impractical, the prayer of the mortgagee should be granted.

It is urged in this case that the property constitutes an adequate security for the mortgage debt. The court examined conflicting testimony in this respect and concluded that the property was adequate to meet the mortgage debt. As a finding of fact, this must be considered as conclusive in view of the conflict in the evidence. We deem the finding immaterial, however. Neither the adequacy nor inadequacy of the security is independently material in cases where waste is established. The mortgagee may not have a receiver merely because of the inadequate security, and the mortgagor may not waste the security because of its real or assumed adequacy. *Kremer v. Crase,* 209 Wis. 183, 244 N. W. 596. It is true that this court has held that where payments on the principal overbalance defaults in interest or taxes, which separately considered might be treated as waste, it is proper for the court to consider the acts of the mortgagor as a whole and to deny a receivership where the net result has been to enhance or at least not to impair the security. *Scharf v. Hartung, supra.* And it has been held that this is not a mere rule of thumb to be solved by striking a bookkeeper's balance, but that when future waste is threatened, a receiver may be appointed. *Dick & Reuteman Co. v. Hunholz, supra.* But in these situations the court considers that treating the acts of the mortgagor as a whole, there was in fact no waste of the security. Where the income of a property is inadequate or barely sufficient to meet the interest, taxes, and operating

charges, and is being fully applied to these purposes, it would seem to be well within the discretion of the court to decline to appoint a receiver upon the ground that the mortgagee was receiving the full benefit of the rents and profits and had no need for protection, and that the receiver would not perform any useful function in the direction of protecting the mortgagee. But where, after commencement of foreclosure proceedings, the rents and profits are not applied to interest or taxes, or where, if they are so applied, there is a surplus, and this is being used by the mortgagor for his own purposes, neither the fact that the interest and taxes are paid nor the fact that the property is an adequate security is a defense to the charge of waste or a factor justifying exercise of a discretion not to appoint a receiver.

The foregoing disposes of this case. The use of the surplus over that necessary to pay interest, taxes, and operating expenses was by the terms of the contract a part of the security of plaintiff. When this was used by the mortgagor for purposes of his own, it constituted waste. The adequacy of the security is legally immaterial. There were no acts on the part of the mortgagor here which so added to the plaintiff's security as to balance or nullify the acts constituting waste. There is here the further fact that the property involved is not a homestead but was improved and maintained for investment purposes. Under these circumstances, the refusal to appoint a receiver must be held to constitute an abuse of discretion.

*By the Court.*—Order reversed, and cause remanded for further proceedings in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on September 14, 1937.