M&I MARSHALL & ILSLEY BANK,
Plaintiff-Respondent,

v.

URQUHART COMPANIES, Glen G. Urquhart,
Colleen Urquhart, HMU Incorporated,
HMU Management Corporation,
Birch Hill Health Care Center, Inc.,
Evergreen Health Care Center, Inc.,
and Ellsworth Health Care Center, Inc.,
Defendants,

Michael S. POLSKY and Receiver,
Defendants-Respondents,

REINHART FOODSERVICE, INC.,
Defendant-Appellant.

Court of Appeals

*No. 2004AP2743. Submitted on briefs May 23, 2005.*
*—Decided September 15, 2005.*

2005 WI App 225

(Also reported in 706 N.W.2d 335.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Samuel C. Wisotzkey* of *Kohner, Mann & Kailas, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *David I. Cisar* of *Von Briesen & Roper, S.C.*, Milwaukee.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J.   Reinhart Foodservice, Inc., a supplier of food to three nursing homes being operated by a receiver, appeals an order that denied its motion to intervene in the receivership proceeding and its petition for leave to sue the receiver. Reinhart claims that the circuit court erred by denying both of its requests, thereby depriving it of any opportunity to pursue its claim for payment for goods it provided during the receivership that were necessary to the continued op-

eration of the nursing homes. We conclude that Reinhart "claims an interest relating to the property or transaction which is the subject" of the receivership proceeding, such that it is entitled to intervene as a matter of right in the receivership proceeding. *See* Wis. Stat. § 803.09(1) (2003–04).[1] Accordingly, we reverse the appealed order insofar as it denies Reinhart's motion to intervene. Because we conclude that Reinhart must be permitted to intervene in this action, we affirm the circuit court's order denying Reinhart's request for leave to commence a separate action against the receiver.

## BACKGROUND

¶ 2. The Urquhart Companies and related entities owned and operated three nursing homes in Pierce and Shawano Counties. M&I Marshall & Ilsley Bank provided financing for Urquhart's nursing home business and the bank held first-mortgage liens on the three nursing home parcels, together with security interests in the business's personal property. After Urquhart defaulted on its obligations to M&I, the bank foreclosed. Incident to the foreclosure action, the bank successfully petitioned for the appointment of a receiver and the court appointed Michael S. Polsky to act in that capacity.

¶ 3. The parties to the foreclosure action (which did not include Reinhart) stipulated to the entry of an order appointing receiver. The order authorized the receiver "to immediately take possession and control of the Properties, to operate the business thereon." The order also authorized the receiver to use "the Proper-

---

[1] All references to the Wisconsin Statutes are to the 2003–2004 version.

ties' existing bank accounts" and those maintained by HMU Management Corporation "as a depository of any funds which may come into the possession of the Receiver in the liquidation of the assets of the Property." It further authorized the receiver "to borrow from Plaintiff [M&I] any money necessary to properly carry out the terms of this Order and his duties as Receiver." The order also approved the receiver's entry into a management services contract with HDG-WI LLC "for the management of the Properties."[2] Finally, the order authorized the receiver to be paid $225 per hour for his services, plus expenses, "out of the receivership proceeds, or advanced by [M&I]."

¶ 4. The foreclosure judgment authorized a sheriff's sale of the nursing home properties after a six-month redemption period, but M&I chose to forgo a foreclosure sale. Instead, M&I elected to have the receiver operate the nursing homes until they could be sold as going concerns to an entity licensed to operate the facilities. After the receiver had operated the homes for eleven months, the foreclosure parties stipulated to, and the court approved, a negotiated sale of the fore-

---

[2] The management services contract was submitted to the court with the parties' stipulation. It provides, among other things, that, "[c]onsistent with budgets approved by Receiver and on Receiver's behalf, Manager will have the authority to purchase supplies and non-capital equipment necessary and appropriate for the operation of the Facilities." The contract further specifies that "Receiver will be liable for all Facilities Operating Costs" and that, "[t]o the extent required to provide funds to pay Facilities Operating Costs on a timely basis, Receiver will deposit funds in Receiver's bank accounts utilized for payment of operational expenses and make such payments." Finally, the contract specified monthly management fees to HDG of between $11,000 and $13,000 for each of the three facilities.

closed real and personal property to a third party. Under this stipulation and order, the receiver was authorized to accomplish the transfer of assets to the buyer, to pay the commission and "all necessary closing costs," and to "pay the net proceeds from the sale of the Property to M & I in partial satisfaction of its secured claim in this matter." The present record contains no information regarding the terms of the sale, no accounting by the receiver of his operation of the business prior to the sale and no order for discharge of the receiver or release of his bond.

¶ 5.  Reinhart supplied food to the three nursing homes while they were owned and operated by Urquhart, and it continued to supply food to them after the receiver took possession of them. Reinhart received timely payments for its deliveries during the receivership except for its deliveries made during the final month before the homes were sold. In order to obtain payment of its $14,022.42 claim for its final food deliveries during the receivership, Reinhart requested the circuit court to either (1) grant it leave to sue the receiver for its final bill, or (2) permit it to intervene in the receivership proceeding to present its claim for payment. M&I opposed both requests. The circuit court concluded that, because Reinhart was an "unsecured creditor" and "no assets of the receivership [are] available to unsecured creditors," Reinhart was not owed a duty by the receiver and did not possess an interest in the property subject to the receivership. Accordingly, the court denied both of Reinhart's requests and entered an order to that effect. Reinhart appeals.

## ANALYSIS

¶ 6.  We first address whether the circuit court erred in denying Reinhart's motion to intervene in the

receivership proceeding. Whether a party is entitled to intervene in an action as a matter of right under Wis. Stat. § 803.09(1) is a question of law we decide de novo. *Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 470, 516 N.W.2d 357 (1994). The statute provides as follows:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

Section 803.09(1).

¶ 7. The supreme court has explained that a prospective intervenor, in order to prevail, must demonstrate that: (1) the movant claims an interest "relating to the property or transaction which is the subject of the action"; (2) the disposition of the action may as a practical matter impair or impede the proposed intervenor's ability to protect that interest; (3) the movant's interest will not be adequately represented by existing parties to the action; and (4) the motion to intervene was made in a timely fashion. *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 545, 334 N.W.2d 252 (1983). This court has noted that motions to intervene must be evaluated "with an eye toward disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 742–43, 601 N.W.2d 301 (Ct. App. 1999).

¶ 8. We first address whether Reinhart meets the threshold requirement for intervention as of right—a

631

claim to an interest in the property or transaction that is the subject of the receivership proceeding. The circuit court concluded that Reinhart had no interest in the receivership proceeding because it held no lien against the real or personal property that M&I had foreclosed upon, which property, in turn, was entrusted to the receiver to protect and manage until it could be sold. M&I[3] urges us to adopt the circuit court's view, arguing that the term "interest" for purposes of Wis. Stat. § 803.09(1) must be understood as an "interest in the collateral" that the receiver held and managed. The bank maintains that, because all of Urquhart's real and personal property was encumbered by mortgages and security interests in its favor, and Reinhart had no interest of any kind in the collateral, Reinhart can claim no interest in the property or transaction that is the subject of the foreclosure and receivership proceedings.

¶ 9. We note first that M&I's argument overlooks an important distinction that must be drawn between unpaid, unsecured creditors of the Urquhart companies, and the persons or entities who supplied goods or services during the period of the receivership. We agree with M&I that Reinhart may not intervene in the foreclosure and receivership proceedings to seek payment for any balance remaining unpaid for food delivered to Urquhart prior to the appointment of the receiver. Reinhart seeks to intervene, however, to obtain payment for goods it furnished to the nursing homes after the receiver took possession of the homes and operated them pursuant to the circuit court's order.

---

[3] M&I and the receiver, Michael Polsky, are represented by the same counsel on appeal and they have filed a joint brief. For convenience, we will refer in our analysis to both, collectively, as "M&I" except where it is necessary to separately identify them.

In other words, even though Reinhart may also be an unpaid, unsecured creditor of the Urquhart companies, its status as an unpaid supplier of goods to the receiver is what provides Reinhart the basis for claiming "an interest relating to the property or transaction which is the subject" of the receivership proceeding.

¶ 10. There appears to be no dispute that the receiver in this case was appointed under Wis. Stat. § 813.16(1), which provides that a "receiver may be appointed":

> On the application of either party, when the applying party establishes an apparent right to or interest in property which is the subject of the action and which is in the possession of an adverse party, and the property or its rents and profits are in danger of being lost or materially impaired.

A receiver's primary responsibility, when appointed incident to a foreclosure action, is to preserve and protect the value of the property entrusted to the receiver until the same is sold, that is, to "prevent waste." *See, e.g., Dick & Reuteman Co. v. Jem Realty Co.*, 225 Wis. 428, 274 N.W. 416 (1937). The order appointing the receiver in this case, at M&I's request and with the foreclosure defendants' consent, also directed the receiver "to operate the business [on the foreclosed properties] in the ordinary course" and "to borrow from Plaintiff [M&I] any money necessary to properly carry out the terms of this Order."

¶ 11. The provisions of the court-approved management services contract make clear that the receiver was to purchase and pay for the "supplies and non-capital equipment" necessary to operate the nursing homes. (See footnote two.) Reinhart does not claim to

be a third-party beneficiary of the management services contract, and we do not suggest that to be the case. Our present point is simply that the circuit court's appointing order and the management contract it approved establish that the mortgage debtors (i.e., the former owners and operators of the three nursing homes) were wholly supplanted by the receiver and his contracted managers. Those who provided goods or services necessary to the continued operation of the homes during the receivership did not, therefore, become creditors of the mortgagors, but of the receiver who controlled the properties and operated the business thereon "in the ordinary course."

¶ 12.   In addition to any provisions set forth in an appointing order, a receiver who is appointed by a court to operate a business also incurs a statutory obligation to obtain and pay for items necessary to the continuation of the business:

> *Whenever a receiver shall be appointed to manage or close up any business,* the receiver shall immediately report to the court the amount due the employees in such business; and said *court shall order the receiver to pay out of the first receipts of said business, after the payment of costs,* debts due the United States or this state, taxes and assessments *and the current expenses of carrying on or closing said business,* the wages, including pension, welfare and vacation benefits, of such employees earned during the last 3 months of employment and within one year prior to the receiver's appointment.

WIS. STAT. § 813.17 (emphasis added). M&I maintains, however, that "the only reasonable interpretation" of the emphasized language is that "the first receipts of said business" means "those receipts collected by the

receiver *after* payment of any amount owed to secured creditors of the business" (emphasis added).

¶ 13.  We reject M&I's proffered interpretation. First, nothing in the language of WIS. STAT. § 813.17 suggests such a qualification or limitation on the meaning of "first receipts of said business." Furthermore, we doubt that M&I would advance an argument that, had the receiver determined that roof repairs were necessary to preserve and protect the property during the receivership, the receiver would be under no obligation to pay for the repairs unless the sale of the property generated a surplus over the secured debt. In our view, Reinhart stands in the same position as the hypothetical roofing contractor because Reinhart provided goods necessary to the continued operation of the nursing homes during the receivership, thereby preserving their value by permitting them to be sold as going concerns.

¶ 14.  We thus conclude that Reinhart claims an interest "relating to the property or transaction which is the subject" of the receivership proceeding. *See* WIS. STAT. § 803.09(1). Specifically, Reinhart, as a supplier of goods to the receiver, has an interest in ensuring that the receiver carries out his court-ordered and statutory obligations to pay "the current expenses of carrying on" the nursing home business. *See* WIS. STAT. § 813.17. Because Reinhart claims to have furnished goods necessary to the receiver's operation of the nursing homes during the receivership, Reinhart must be allowed to present its claim for payment in the receivership proceeding, provided it satisfies the remaining requirements for intervention as a matter of right.

635

¶ 15. The second part of the intervention test requires a movant to show that its ability to protect its interest will be impaired by the disposition of the original action. *State ex rel. Bilder*, 112 Wis. 2d at 545. Reinhart contends that if it is not allowed to intervene in the receivership proceeding and present its claim for payment before the receiver submits his accounting and is discharged, Reinhart's ability to obtain payment for the goods it delivered to the receiver will be substantially impaired. We agree.

¶ 16. The receivership proceeding may not be the only forum in which Reinhart could seek to obtain payment of its claim, but it certainly provides the most logical forum and the most convenient one for all concerned. Not only are the receiver and M&I already subject to the circuit court's jurisdiction in this action, but so are the funds generated during the receivership from which Reinhart hopes to be paid. The resolution of Reinhart's claim will almost certainly involve an analysis of the receiver's duties and obligations arising under the court's appointing order, as well as an examination of the receiver's acts and possible omissions in discharging his duties. If the nursing homes operated at a deficit during the receivership, a resolution of Reinhart's claim may also involve an analysis of M&I's obligations, if any, arising from its request for the appointment of a receiver and its election to pursue a negotiated sale of the properties as going concerns.[4]

---

[4] Generally, a party who requests and obtains the appointment of a receiver incurs no liability for the expenses of the receivership "unless there are special circumstances which dictate that, in equity, the expenses of the receivership ought to be charged against" the party requesting the appointment. *First Nat'l Bank of Neenah v. Clark & Lund Boat Co.*, 68 Wis. 2d 738,

¶ 17. If Reinhart is not permitted to intervene and the receiver is discharged in this action, a subsequent attempt by Reinhart to sue either the receiver or M&I might well be met with claims that the receiver can no longer be sued, or that Reinhart should be precluded from "re-litigating" M&I's entitlement to all moneys remitted to it by the receiver, an issue that was arguably litigated and determined by the foreclosure judgment, the order approving sale and any subsequently entered order for discharge of the receiver. These potential obstacles to Reinhart's ability to protect its interest in being paid for goods it supplied to the receiver are simply not present if Reinhart is permitted to intervene in this action. We thus conclude that

742, 229 N.W.2d 221 (1975). Special circumstances may arise when a plaintiff has agreed to pay the receiver's compensation. *Id.* The present order appointing the receiver provides that his fees "shall be paid out of the receivership proceeds, or advanced by the Plaintiff [M&I]."

The present record contains no evidence regarding the receiver's receipts and disbursements during the receivership. The receiver asserted during argument in the circuit court on Reinhart's motion that "the bank left (sic) the business substantial amounts during the receivership so that the health and welfare of the patients of the nursing home could be maintained and employees could be paid." We have no evidence or findings before us, however, as to whether the nursing homes operated at a surplus or a deficit during the receivership, how much M&I may have advanced to pay the receiver's fees or other receivership expenses, whether there are other unpaid suppliers of goods or services to the receivership, the amount of sale proceeds the receiver turned over to M&I, or whether the receiver remitted any other funds to the bank. We express no opinion regarding whether, or from whom, Reinhart is entitled to recover on its claim. We conclude only that Reinhart must be permitted to intervene in this action in order that its claim may be presented and resolved.

637

Reinhart has demonstrated that it is "so situated that the disposition of the action may as a practical matter impair or impede [Reinhart]'s ability to protect that interest." WIS. STAT. § 803.09(1).

¶ 18. As for whether Reinhart's interests are adequately represented by the existing parties, we easily conclude they are not. The inadequacy of representation by existing parties is satisfied "if the applicant shows that the representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Wolff*, 229 Wis. 2d at 747. None of the existing parties in this action are aligned with Reinhart or its interests. M&I certainly has no interest in seeing that Reinhart gets paid because any plausible source of payment to Reinhart will diminish the sum M&I will realize from its foreclosure action against Urquhart. The foreclosure defendants also presumably want to see M&I's cash recovery maximized so as to maximize the reduction of their debt and any resulting deficiency judgment. Finally, the receiver would have little or no personal interest in seeing that Reinhart gets paid for the food it delivered. At this point in the proceeding, the receiver would seem to be most interested in being discharged by the court as promptly as possible. The fact that the receiver has aligned himself with M&I on appeal to oppose Reinhart's intervention demonstrates the point.

¶ 19. Finally, we address the last factor relevant to intervention as of right, whether Reinhart moved to intervene in a timely fashion. M&I asserts that Reinhart's motion was untimely. The Wisconsin Supreme Court has identified two factors a court should consider when deciding whether a motion to intervene

638

is timely. *See State ex rel. Bilder*, 112 Wis. 2d at 550. The "critical" factor is "whether, in view of all the circumstances[,] the proposed intervenor acted promptly," and a "second factor is whether the intervention will prejudice the original parties to the lawsuit." *Id.*

¶ 20.  The receiver was appointed in January 2003. Reinhart made food deliveries to the nursing homes under receivership from January through October 2003, and was apparently paid for these deliveries. Reinhart also made deliveries in November, but it claims that it did not receive any payment for them. The foreclosure parties filed their stipulation for the negotiated sale of the properties to a third party on November 25, 2003, and the transaction presumably closed shortly thereafter. On the same day the stipulation was filed, the court entered an order authorizing the sale and directing the receiver to pay the commission and necessary closing costs and remit the net proceeds to M&I.

¶ 21.  Reinhart alleged in its petition for leave to sue the receiver that it first learned of the receivership and sale "[s]ubsequent to December 2003," and it then requested but was denied payment from the receiver for its November deliveries. M&I does not appear to dispute these allegations. Reinhart filed a "Request for Notices and Pleadings" in this action on April 9, 2004, in which it identified itself as "a creditor of the Receiver appointed in this matter" and requested that its counsel be provided copies of all subsequent filings in the action. On June 8, 2004, Reinhart filed a petition for leave to sue the receiver, and, in conjunction with briefing on M&I's objection to the petition, Reinhart filed its alternative motion to intervene in this action on June 23rd.

¶ 22. The receiver apparently gave no notice at any time to Reinhart that the nursing homes were being operated under a receivership.[5] Reinhart would thus have had no reason to inquire into the management or operation of the businesses while it was receiving timely payments for its deliveries. It was not until at least December 2003 or early in 2004, when Reinhart had not received payment for its November deliveries, that it had cause to inquire into the circumstances surrounding the operation of the nursing homes and to determine who was responsible for paying their operating expenses. Within a reasonable time thereafter, Reinhart retained counsel, notified M&I and the receiver of its interest in the receivership proceeding and made appropriate requests of the court for leave to sue the receiver or to be allowed to intervene in the existing

---

[5] Reinhart would have us conclude that receivers appointed under WIS. STAT. § 813.16(1), like those governed by WIS. STAT. § 128.14, should be required to give notice of the receivership to all who supply goods or services to a business being operated by the receiver. It argues that, because it had no notice of the receivership, it was unable to take timely steps to protect itself, such as terminating food deliveries to the nursing homes or requiring cash pre-payments for all deliveries. If we were to conclude that a supplier of goods to a receiver appointed under § 813.16(1) has no right to intervene in the receivership proceeding to advance a claim for payment for goods delivered during the receivership, we might conclude that it would be unfair for a receiver not to give notice that the business was in receivership and that suppliers of goods might not get paid for their deliveries. However, because we conclude that Reinhart has a right to intervene, and that it has done so in a timely fashion, we do not address whether the lack of notice to Reinhart of the receivership constituted actionable fraud or other wrongdoing, as Reinhart asserts.

proceeding. In short, we are satisfied, in view of all the circumstances, that Reinhart acted promptly to intervene in the receivership proceeding.

¶ 23. The second part of the timeliness inquiry requires us to consider whether the existing parties to the action would be prejudiced by Reinhart's intervention. *State ex rel. Bilder*, 112 Wis. 2d at 550. Noting that the sale proceeds have been distributed and that it is still owed some $3 million, M&I contends that Reinhart's intervention in this proceeding is without support in Wisconsin law, will "disturb M&I's rights as a secured creditor ... [and] would not only be futile, it would needlessly prolong this case." We are not persuaded that M&I's rights as a secured creditor are necessarily prejudiced by Reinhart's intervention, but even if that is the case, any prejudice will be slight as compared to the prejudice Reinhart would suffer if it is denied the opportunity to present its claim in the receiver proceeding.

¶ 24. M&I acknowledges that the receiver has not filed his final report or been discharged by the court, which means that the receivership proceeding is still pending. M&I requested the court to authorize the receiver to operate the nursing home business during the pendency of the foreclosure action. When the bank elected to forgo a sheriff's sale and, instead, to have the operation of the homes continue under the receivership until they could be sold as going concerns, M&I knew or should have known that additional costs would be incurred in keeping the homes in operation. Given the provisions of the order appointing receiver, M&I must also have understood that it might be called upon to advance the sums necessary to cover those costs.[6] We

---

[6] The receiver told the circuit court during argument on Reinhart's motion that, because the bank did not hold the

cannot conclude that it is unfair to M&I to allow Reinhart's claim to be presented and resolved in this proceeding before the receiver is discharged.

¶ 25.  For the reasons stated above, we reverse the trial court's order insofar as it denies Reinhart's motion to intervene in the receivership proceeding. We emphasize again (see footnote four) that we do *not* decide in this opinion whether Reinhart is entitled to the payment it seeks or, if so, who is liable for any sum Reinhart may be due. On remand, the parties will have the opportunity to make the necessary factual record and legal arguments addressing these questions. Our present conclusion is only that Reinhart must be permitted to intervene in this action in order to present its claim.

■■■■

¶ 26.  Reinhart's initial request of the court was for leave to sue the receiver. *See Arthur v. Brendel,* 165 Wis. 2d 324, 329, 477 N.W.2d 655 (Ct. App. 1991)

---

required state license to operate the nursing homes, it could not purchase the homes at a sheriff's sale and keep them operating. The receiver explained that, therefore, operation of the homes under a receivership and a negotiated sale to a properly licensed purchaser was "the only way to . . . maintain the health and welfare of the residents of the nursing home[s]." It also seems reasonable to infer, however, that M&I hoped to obtain a better price for its collateral by selling the real and personal property as a part of a going concern, rather than as abandoned and empty former nursing homes. Regardless of what prompted M&I to have a receiver appointed to operate the homes until a suitable buyer could be found, that is the choice it made. The order appointing the receiver, drafted by M&I's counsel, directed the receiver to take "possession and control" of the nursing home properties, "to operate the business thereon in the ordinary course," and "to borrow from Plaintiff [M&I] any money necessary to properly carry out the terms of this Order."

(explaining that a party may not commence an action against a receiver without leave of the court that appointed the receiver). The parties agree that the determination whether to grant leave to sue a receiver lies within the circuit court's discretion. *See Crosby v. Keilman*, 206 Wis. 252, 254, 239 N.W. 431 (1931); *Nash v. Meggett*, 89 Wis. 486, 61 N.W. 283 (1894), *overruled on other grounds by Bloomquist v. Better Bus. Bureau of Milwaukee*, 17 Wis. 2d 101, 115 N.W.2d 545 (1962). The parties devote a major portion of their appellate arguments to the question of whether the circuit court properly exercised its discretion in denying Reinhart leave to sue the receiver. Given our conclusion that Reinhart may intervene in the existing action, our treatment of the leave-to-sue issue will be brief.

¶ 27.   Although the precedent is an old one, we see no reason why the supreme court's conclusion and disposition in *Mechanics' Nat'l Bank of New York v. Landauer*, 68 Wis. 44, 31 N.W. 160 (1887),[7] should not govern on the present facts. The court concluded in *Mechanics' Nat'l Bank of New York* that, if the relief sought can be obtained by petition in the action in which a receiver is appointed, the decision to refuse to grant leave to bring a separate action against the receiver does not constitute an erroneous exercise of discretion. *Id.* at 47–48. Had the circuit court granted Reinhart's request to intervene as a matter of right in the present action, its denial of Reinhart's alternative request for leave to sue the receiver would thus have been an affirmable exercise of discretion. Because Reinhart will now be permitted to intervene in the receiv-

---

[7] This case is listed as *Davis v. Michelbacher* in the Northwestern Reporter.

ership proceeding, we see no reason to disturb the circuit court's denial of Reinhart's request for leave to commence a separate action against the receiver.

¶ 28.  Reinhart's two requests were made in the alternative, and one has now been granted. We affirm the circuit court's denial of leave to sue the receiver.

## CONCLUSION

¶ 29.  For the reasons discussed above, we reverse the appealed order insofar as it denies Reinhart's motion to intervene in the receivership proceeding. We affirm the denial of Reinhart's request for leave to commence a separate action against the receiver. We remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with instructions.