Jody HELGELAND, Jessie Tanner, Virginia Wolf,
Carol Schumacher, Diane Schermann,
Michelle Collins, Megan Sapnar,
Ingrid Ankerson, Eloise McPike,
Janice Barnett, Jayne Dunnum and
Robin Timm, Plaintiffs-Respondents,

v.

WISCONSIN MUNICIPALITIES, Appellant,†

WISCONSIN STATE SENATE AND ASSEMBLY,
Co-Appellant,†

DEPARTMENT OF EMPLOYEE TRUST FUNDS,
Employee Trust Funds Board, Eric Stanchfield
and Group Insurance Board,
Defendants-Respondents.

Court of Appeals

*No. 2005AP2540. Submitted on briefs March 3, 2006.
—Decided September 28, 2006.*

2006 WI App 216

(Also reported in 724 N.W.2d 208.)

883

On behalf of the appellant, the cause was submitted on the briefs of *Michael D. Dean* of *Michael D. Dean, LLC*, Waukesha.

On behalf of the co-appellant, the cause was submitted on the briefs of *Glen Lavy* of *Alliance Defense Fund*, Scottsdale, Arizona, and *Krystal Williams-Oby* of *Alliance Defense Fund*, Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Linda Roberson* of *Balisle & Roberson*, Madison; *Laurence J. Dupuis* of *ACLU of Wisconsin Foundation, Inc.*, Milwaukee; *John A. Knight* of *American Civil Liberties Union Foundation*, Chicago, Illinois; and *Rose A. Saxe* and *James D. Esseks* of *American Civil Liberties Union Foundation*, New York, New York.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Christopher J. Blythe* and *Jennifer Sloan Lattis*, assistant attorneys general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. This is a suit challenging the constitutionality of statutes administered by a state agency. The plaintiffs in this case filed a declaratory judgment action challenging the constitutionality of WIS. STAT. §§ 40.02 and 103.10(3) (2003–04).[1] The Wisconsin State Senate and State Assembly (the Legislature) and eight Wisconsin municipalities (the Municipalities) sought to intervene in the action, but the circuit court denied their motions to intervene. Both potential intervenors appeal, arguing they should be granted intervention as a matter of right under WIS. STAT. § 803.09(1) or alternatively, permissive intervention under § 803.09(2). The Municipalities separately argue that they should be joined sua sponte under either WIS. STAT. § 803.03(1)(b) or WIS. STAT. § 806.04(11).

¶ 2. We conclude that the Legislature and the Municipalities are not entitled to intervention as a

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

893

matter of right because the Legislature presents no interest sufficiently related to and potentially impaired by the declaratory judgment action, and the Municipalities' interests are adequately represented by the defendants in this case. Regarding the motions for permissive intervention, we conclude that the circuit court properly denied the Legislature's motion because the Legislature did not have a "defense" within the meaning of WIS. STAT. § 803.09(2). As to the Municipalities, we conclude that the circuit court properly exercised its discretion in deciding that allowing the Municipalities to intervene would result in undue delay. We therefore affirm the circuit court's denial of the Legislature's and Municipalities' motions to intervene. We further conclude that the circuit court properly denied the Municipalities' motion to be joined sua sponte under WIS. STAT. § 803.03 or WIS. STAT. § 806.04(11) because their interests are adequately represented by the defendants. Thus, we also affirm this part of the circuit court's order.

## BACKGROUND

¶ 3. Jody Helgeland and five other current or former state employees, along with their same-sex domestic partners,[2] comprise the plaintiffs (collectively referred to as "Helgeland") in this case. Helgeland filed a declaratory judgment action challenging the constitutionality of WIS. STAT. § 40.02(20),[3] which defines "de-

---

[2] The First Amended Complaint identifies the plaintiffs and their partners both as life partners and domestic partners.

[3] WISCONSIN STAT. § 40.02(20) reads as follows:

"Dependent" means the spouse, minor child, including stepchildren of the current marriage dependent on the employee for support and maintenance, or child of any age, including stepchil-

894

pendent" for purposes of state employee health insurance eligibility, and of WIS. STAT. § 103.10,[4] which defines those family members with a serious health condition that an employee may take family leave to care for. Helgeland argues that these provisions violate the equal protection guarantees of WIS. CONST. art. I, § 1[5] by providing married state employees with health insurance, sick leave carryover, and family leave benefits enabling them to care for their spouses, while denying similarly situated state employees in same-sex intimate partnerships the same benefits. Helgeland argues that under these statutory provisions, state employees in same-sex domestic partnerships are deprived of their constitutional right to equal protection

dren of the current marriage, if handicapped to an extent requiring continued dependence. For group insurance purposes only, the department may promulgate rules with a different definition of "dependent" than the one otherwise provided in this subsection for each group insurance plan.

[4] WISCONSIN STAT. § 103.10 reads in pertinent part:

**(1)** DEFINITIONS. In this section:

. . . .

(h) "Spouse" means an employee's legal husband or wife.

. . . .

(3)(b) An employee may take family leave for any of the following reasons:

. . . .

3. To care for the employee's child, spouse or parent, if the child, spouse or parent has a serious health condition.

[5] WISCONSIN CONST. art. I, § 1 states, "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

on the basis of their sexual orientation, sex and marital status.

¶ 4. In her amended complaint Helgeland named as defendants the Department of Employee Trust Funds (DETF) and other state actors[6] responsible for the administration of state employee benefit plans. DETF is represented in this action by the Wisconsin Department of Justice, with Attorney General Peg Lautenschlager and Assistant Attorney General Christopher Blythe serving as DETF's counsel. The Legislature and the Municipalities moved to intervene in this lawsuit as a matter of right under WIS. STAT. § 803.09(1) or, alternatively, by permissive intervention under § 803.09(2). As part of their briefing in support of their motion for intervention, the Municipalities additionally argued that they should be joined sua sponte as necessary parties under either WIS. STAT. § 803.03(1)(b) or WIS. STAT. § 806.04(11). Following the submission of briefs, affidavits and other evidence, and oral argument the circuit court denied the motions for intervention and declined to join the Municipalities. Both the Legislature and the Municipalities appeal.

## DISCUSSION

### I. INTERVENTION AS A MATTER OF RIGHT UNDER WIS. STAT. § 803.09(1)

¶ 5. The Legislature and Municipalities both argue that the circuit court erred in not granting their

---

[6] Helgeland also named as co-defendants the Employee Trust Funds Board, the Group Insurance Board, and Eric Stanchfield, who is the secretary of the Department of Employee Trust Funds. Throughout the opinion we will refer to the defendants collectively as DETF.

motions to intervene as a matter of right under WIS. STAT. § 803.09(1).[7] Whether to allow intervention as a matter of right under § 803.09(1) is a question of law, which we review de novo. *Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 470, 516 N.W.2d 357 (1994) (citing *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 549, 334 N.W.2d 252 (1983)). A movant must meet four requirements to intervene as a matter of right: (1) that the motion to intervene be made in a timely fashion; (2) that the movant claim an interest sufficiently related to the property or transaction which is the subject of the action; (3) that the movant be situated such that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest; and (4) that the movant's interest not be adequately represented by existing parties. *See Bilder*, 112 Wis. 2d at 545.

¶ 6. While these statutory requirements are well established, we "have no precise formula for determining whether a potential intervenor meets the requirements of § 803.09(1), STATS., and is thus entitled to intervene in a lawsuit." *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 742, 601 N.W.2d 301 (Ct. App. 1999). Rather, we evaluate the motion to intervene practically, not technically, "with an eye toward 'disposing of lawsuits by involving as many apparently concerned per-

---

[7] WISCONSIN STAT. § 803.09(1) states:

Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

sons as is compatible with efficiency and due process.' "
*Id.* at 742–43. The purpose of this approach is to strike
a balance between two potentially conflicting objectives
underlying the statute: the protection of an efficient
judiciary through the resolution of related issues in a
single lawsuit, and the protection of an original party's
ability to conduct its own lawsuit without undue com-
plications. *Id.* at 743. Thus, we allow intervention as a
matter of right only where the intervenor is "necessary
to the adjudication of the action." *City of Madison v.
WERC*, 2000 WI 39, ¶ 11 n.11, 234 Wis. 2d 550, 610
N.W.2d 94 (citing *White House Milk Co. v. Thomson*,
275 Wis. 243, 247, 81 N.W.2d 725 (1957)).

¶ 7. DETF does not dispute that both the
Legislature's and the Municipalities' motions to inter-
vene were made in a timely fashion. Thus, the first
statutory requirement for intervention of right under
WIS. STAT. § 803.09(1) is satisfied. We therefore turn our
attention to the remaining three requirements, ad-
dressing their applicability first to the Legislature and
then to the Municipalities, and weighing the facts and
circumstances of each potential intervenor's claims
"against the background of the policies underlying the
intervention rule," to determine whether intervention
is necessary for the proper adjudication of this case.
*Bilder*, 112 Wis. 2d at 549.

*A. Legislature*

¶ 8. With the statute's underlying policy of achiev-
ing balance between efficiency and due process in mind,
we examine the interrelated second and third statutory
requirements of WIS. STAT. § 803.09(1) in conjunction
with each other, i.e., whether the Legislature has an

898

interest sufficiently related to the subject of this declaratory judgment action, and whether the disposition of this action may impair or impede the Legislature's ability to protect such an interest. We conclude for the reasons discussed below that the Legislature has not claimed a sufficiently related interest, and that even if it had, the disposition of this suit will not impair or impede the Legislature's ability to protect such an interest. Having so concluded, we need not reach the fourth, "adequate representation," prong of the § 803.09(1) test.[8]

■■■■■

¶ 9. The Legislature argues that it has three interests at stake which could be impaired or impeded by this lawsuit if it is not allowed to intervene: (1) its prerogative of establishing public policy; (2) its desire to defend the constitutionality of the public policy it has established regarding employee benefits;[9] and (3) its

---

[8] We do note, however, that the same conclusions we reach in the next section, applying the adequate representation prong to the Municipalities, would apply to the Legislature as well, were it necessary to apply the final part of the WIS. STAT. § 803.09(1) test in our analysis to the Legislature's intervention request.

[9] DETF argues that this second alleged interest should not be considered by us since it was not presented to the circuit court, and the Legislature consequently "failed to preserve this argument." Upon examining the record, however, we note that while the Legislature did not explicitly argue to the circuit court that it had an interest in defending the constitutionality of the public policies it establishes, such an interest may be considered to be an implicit element of its more general arguments. In addition, even if the claimed interest in defending the constitutionality of its public policies were viewed as a new issue raised for the first time on appeal, "[t]he general rule that appellate

899

constitutional duty to establish and balance the budget. In assessing whether these articulated interests are sufficiently related to the present action within the meaning of WIS. STAT. § 803.09(1), we agree with the Legislature's assessment that an interest need not be "judicially enforceable" in a separate proceeding to be sufficiently related for purposes of intervention of right. *Wolff*, 229 Wis. 2d at 744. However, merely naming an indirect interest in a lawsuit's subject matter is not enough. "One whose interest is indirect cannot intervene as a matter of right." *Lodge 78, Int'l Ass'n of Machinists v. Nickel*, 20 Wis. 2d 42, 46, 121 N.W.2d 297 (1963). Instead, the interest must be "of such direct and immediate character that the intervenor will either gain or lose by the direct operation of the judgment." *Id.* Applying these standards, we conclude that none of the interests named by the Legislature bear a direct relationship to this declaratory judgment action or will be directly impaired or impeded by the disposition in this lawsuit.

¶ 10. Turning first to the Legislature's argument that its public policy prerogative requires intervention, there is no doubt that the Legislature is entrusted with setting public policy for the state. *See Flynn v. DOA,*

courts will not consider issues not raised in the trial court is a rule of judicial administration and is subject to exceptions. These exceptions involve questions of law which, though not raised below, may nevertheless be raised and decided by the court on appeal." *Harvest Sav. Bank v. ROI Invs.*, 209 Wis. 2d 586, 596, 563 N.W.2d 579 (Ct. App. 1997) (citation omitted). Whether an interest in defending the constitutionality of public policies is sufficiently related within the meaning of WIS. STAT. § 803.09(1) is such a question of law that we choose to decide, even if it is raised for the first time on appeal.

216 Wis. 2d 521, 539, 576 N.W.2d 245 (1998); *Hengel v. Hengel*, 122 Wis. 2d 737, 742, 365 N.W.2d 16 (Ct. App. 1985); *see also* WIS. STAT. § 15.001(1).[10] It is also well established that it is the judiciary's exclusive responsibility to adjudicate "any conflicts which might arise from the interpretation or application of the laws," which necessarily includes determining the constitutionality of those laws. WIS. STAT. § 15.001(1); *see also Citizens Util. Bd. v. Klauser*, 194 Wis. 2d 484, 492–93 n.7, 534 N.W.2d 608 (1995) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803)). As the supreme court emphasized in *Klauser*, in cases involving constitutional challenges, "[i]t is the responsibility of the judiciary to act, notwithstanding the fact that the case involves political considerations or that final judgment may have practical consequences." *Klauser*, 194 Wis. 2d at 492–93 n.7.

¶ 11. The Legislature has failed to persuade us that its constitutionally delegated authority to establish public policy would be hampered by a ruling in this case favoring Helgeland. The Legislature's interest in this respect is limited to establishing policy through the

---

[10] WISCONSIN STAT. § 15.001(1) reads as follows:

THREE BRANCHES OF GOVERNMENT. The "republican form of government" guaranteed by the U.S. Constitution contemplates the separation of powers within state government among the legislative, the executive and the judicial branches of the government. The legislative branch has the broad objective of determining policies and programs and review of program performance for programs previously authorized, the executive branch carries out the programs and policies and the judicial branch has the responsibility for adjudicating any conflicts which might arise from the interpretation or application of the laws. It is a traditional concept of American government that the 3 branches are to function separately, without intermingling of authority, except as specifically provided by law.

enactment of *constitutional* legislation, and it is the court's exclusive responsibility to determine whether legislation is constitutional. *See Hengel*, 122 Wis. 2d at 742. A ruling that the legislation being challenged in this case is unconstitutional would not affect the Legislature's prerogative and ability to enact other constitutional legislation. Therefore, we conclude that the Legislature has not demonstrated the impairment of an interest of such " 'direct and immediate character that [it] will either gain or lose by the direct operation of the judgment' " and that the interest may be considered sufficiently related or impaired to satisfy the statutory requirements of WIS. STAT. § 803.09(1). *See City of Madison*, 234 Wis. 2d 550, ¶ 11 n.9.

¶ 12. We consider next the Legislature's desire to defend the constitutionality of the public policy it has established. The Legislature specifically claims an interest in defending the propriety of the court's holding in *Phillips*, invoking *Phillips* for the proposition that the issue of whether to extend employment benefits to state employees in same-sex domestic partnerships "is a legislative decision, not one for the courts." *See Phillips v. Wisconsin Pers. Comm'n,* 167 Wis. 2d 205, 213 n.1, 482 N.W.2d 121 (Ct. App. 1992). This argument suffers from two deficiencies.

¶ 13. First, the Legislature misunderstands the nature of footnote one in *Phillips*. The Legislature treats our discussion in this footnote as a holding in the case. The Legislature is wrong. We agree with the DETF that footnote one is simply dicta; it is plain that the text in footnote one of *Phillips* is neither a controlling ruling establishing binding law, nor does it abrogate in any way the well-established law of judicial review establishing the judiciary, not the legislature, as the proper branch of government for reviewing the constitutionality of laws.

¶ 14. In addition, the Legislature's claimed interest in defending *Phillips* suffers from the same fundamental flaw as its broader public policy prerogative argument: by claiming an interest in defending its statutes against constitutional challenges, the Legislature conflates the roles of our government's separate branches. Under our tripartite system of government, the legislature's role is to determine public policy by enacting legislation. In contrast, it is exclusively the judiciary's role to determine the constitutionality of such legislation, *see* Wis. Stat. § 15.001(1); *Klauser*, 194 Wis. 2d at 492–93 n.7; *Marbury*, 5 U.S. (1 Cranch) 137, and it is the executive's role to defend the constitutionality of statutes. *See* Wis. Stat. § 165.25 ("The department of justice shall . . . defend all actions and proceedings, civil or criminal, in the court of appeals and the supreme court, in which the state is *interested* or a party.") (emphasis added); *see also State v. City of Oak Creek*, 2000 WI 9, ¶ 23 n.14, 232 Wis. 2d 612, 605 N.W.2d 526 (" '[o]nce legislation is enacted it becomes the affirmative duty of the Attorney General to defend its constitutionality' ").

¶ 15. The final interest asserted by the Legislature is its constitutional duty to establish and balance the budget. The legislature is charged with the duties of establishing the state budget and appropriating the funds necessary to pay for estimated expenses. Wis. Const. art. VIII, §§ 2, 5.[11] This case is like a multitude of cases in which the courts' interpretation of statutes indirectly affects the state's budget: any ruling broad-

---

[11] Wisconsin Const. art. VIII, § 2 states, "No money shall be paid out of the treasury except in pursuance of an appropriation by law. No appropriation shall be made for the payment of any

ening or reducing either state revenues or expenses has some impact on the budget. While these rulings might increase the financial obligations of the state or cause the Legislature to adjust later budgets in order to compensate for the changes in estimated revenues or expenses, they do not alter the Legislature's fundamental ability to enact and balance the budget.

¶ 16. We also observe that there is no principled distinction between allowing intervention here and allowing it in the myriad of other cases where the interpretation of a statute or constitutional provision is at issue. Allowing intervention in this case would open the door to similar intervention in any case with policy or budgetary ramifications,[12] even when, as here, the executive branch, through the attorney general, fulfills its traditional role defending legislation before the court, as addressed in more detail below. Legislators may often have a preference for how the judicial branch should interpret a statute, but such mere preferences

claim against the state except claims of the United States and judgments, unless filed within six years after the claim accrued."

WISCONSIN CONST. art. VIII, § 5 reads as follows:

> The legislature shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year; and whenever the expenses of any year shall exceed the income, the legislature shall provide for levying a tax for the ensuing year, sufficient, with other sources of income, to pay the deficiency as well as the estimated expenses of such ensuing year.

[12] An example concerning criminal sentencing illustrates how far-reaching such a broad intervention right could become. Under the Legislature's reasoning, it would be able to intervene in a sentencing hearing contesting a proposed sentence as too harsh based on the fact that extended incarceration would be costly to the state and would interfere with the Legislature's budgetary duties.

do not constitute sufficiently related or potentially impaired interests within the meaning of WIS. STAT. § 803.09(1). We conclude that the Legislature's interests are neither sufficiently related to nor potentially impaired by this case.

## B. *Municipalities*

¶ 17. As with the Legislature, the parties do not dispute that the Municipalities' motion for intervention was timely. Thus, we are again concerned with only the three remaining factors of the WIS. STAT. § 803.09(1) test. While we conclude that at least some of the Municipalities may have a sufficiently related interest in the action and that this interest could be impaired by a judgment in Helgeland's favor, we also conclude that this interest is adequately represented by existing parties and therefore the Municipalities do not meet the requirements of § 803.09(1) for intervention as a matter of right.

¶ 18. It is important to clarify which benefits are at issue in this case. Despite the Municipalities' arguments that this lawsuit involves claims to DETF pension benefits, a review of Helgeland's amended complaint and the rest of the record establishes that pension plans are not at issue here. Rather, as the complaint clearly states,

> [t]he benefits at issue in this lawsuit include access to health care for an employee's domestic partner; access to family leave so that an employee can care for a seriously ill domestic partner; and an employee's ability when she leaves state employment, such as at retirement or death, to convert sick leave credits to pay for health insurance for her insured partner.

905

Helgeland explained to the circuit court during the hearing on the motion to intervene, "We're not seeking pension benefits because our clients have the right to name their partners in their pension so it is clear that there is a reason to not seek those particular kinds of benefits." Consequently, with Helgeland explicitly not claiming pension benefits, we limit our review to the legal issues surrounding the health insurance, sick leave carryover, and family leave plan benefits explicitly sought by Helgeland.

¶ 19. It appears likely that three of the eight proposed intervenor Municipalities, Cottage Grove, Watertown, and Oostburg, may have interests sufficiently related to the declaratory action by virtue of being enrolled in the DETF health plans.[13] A decision affecting the applicability of Wis. Stat. §§ 40.02 and 103.10(3) to same-sex domestic partners of state employees could

[13] The other potential intervening Municipalities do not participate in the DETF health insurance, sick leave carryover, and family leave plans at issue in Helgeland's complaint. It does not appear that these other Municipalities' various benefit plans are sufficiently related to the DETF plans at issue in this case.

In addition to raising arguments related to pension plans, the Municipalities argue, but provide no case law supporting their argument, that the stare decisis effect of this case could impair their interest to the point of requiring intervention. We note that although no Wisconsin appellate court has addressed this specific issue, the Seventh Circuit has, and in doing so concluded that courts should base intervention on such stare decisis arguments "infrequently." *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 532 (7th Cir. 1988). Thus, even if we assume the other Municipalities have a direct interest potentially impaired by the stare decisis effect of this case, we still conclude the circuit court properly denied the Municipalities' motion for intervention of right because the existing parties adequately represent the Municipalities' interests.

directly affect these Municipalities in the administration of their health plans pursuant to these statutes, because a judgment in Helgeland's favor would likely increase the amount of benefits these Municipalities would be required to pay. While these Municipalities could likely fulfill the first three elements of WIS. STAT. § 803.09(1), we conclude, however, that the Municipalities' interests are adequately represented by DETF, and therefore that the circuit court properly denied the Municipalities' motion for intervention as a matter of right.

¶ 20. We will ordinarily deem a party's representation of a potential intervenor adequate (1) if there is no showing of collusion between the representative and the opposing party; (2) if the representative's interest is not adverse to that of the proposed intervenor; and (3) if the representative does not fail in the fulfillment of its duty. *See Armada Broad., Inc.*, 183 Wis. 2d at 476; *Sewerage Comm'n of Milwaukee v. DNR*, 104 Wis. 2d 182, 189, 311 N.W.2d 677 (Ct. App. 1981) (citing *United States v. Board of Sch. Comm'rs*, 466 F.2d 573, 575 (7th Cir. 1972)). The movant requesting intervention as a matter of right has the burden of establishing inadequate representation. *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).[14] While the burden of proving inadequate representation generally "should be treated as minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972), this requirement "cannot be treated as so minimal as to write the

---

[14] Because WIS. STAT. § 803.09 is based on Rule 24 of the Federal Rules of Civil Procedure, we may look to cases and commentary relating to Rule 24 for guidance in interpreting § 803.09. *See State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 547, 334 N.W.2d 252 (1983).

requirement completely out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984).

¶ 21. Under the doctrine of *parens patriae*, "a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens." *Environmental Defense Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979). Thus, to intervene in a suit in which a state is already a party, a citizen or subdivision of that state must overcome this presumption of adequate representation through more than a minimal showing that the representation may be inadequate. *Id.* The movant must demonstrate "that its interest is in fact different from that of the state and that the interest will not be represented by the state." *Id.* It is not enough to show that the movant could bring additional, cumulative arguments to the table; there must be actual divergence between the state's position on the primary issue and the potential intervenor's position. *Id.* Such cumulative arguments may always be brought forward through amicus curiae briefs, pursuant to WIS. STAT. § 809.19(7), which does not require intervention.

¶ 22. To support their claim that DETF cannot adequately represent them, the Municipalities present several related arguments. They argue that (1) the attorney general has in public speeches demonstrated support for Helgeland's position, demonstrating her "conflicted loyalties"; (2) DETF is situated differently from the Municipalities, with different objectives; (3) the attorney general has failed to raise important issues and defenses; and (4) the attorney general cannot represent Municipalities in the remedy phase. We reject each of these arguments.

¶ 23. Turning to the Municipalities' first argument, they contend that the attorney general has demonstrated "conflicted loyalties." They argue that she "does not believe [the DETF and the Insurance Board] have any interests at stake to defend" and that she "has repeatedly advocated (both before and during pendency of this action) her position that Plaintiffs are entitled to the relief they seek in direct contravention of controlling Wisconsin authority she is sworn to defend." In support, the Municipalities point to three instances when, in their opinion, the attorney general demonstrated her inability to adequately represent the Municipalities' interests: (1) a statement Lautenschlager made supporting the concept of civil unions for same-sex domestic couples during an October 25, 2002 debate between attorney general candidates; (2) an appearance by the attorney general at the 2005 Madison Gay Pride Rally following statements mentioning this lawsuit by two plaintiffs in this case and their lawyer; and (3) the attorney general's spokesperson's statements to a newspaper that "[i]t's unfortunate to see members of the legislature politicizing a matter best left up to the courts,"[15] which the Municipalities characterize as "abandoning controlling authority laid down in *Phillips*." We are not persuaded that any of these instances demonstrate the attorney general's inability to adequately represent the Municipalities' interests in this case.

¶ 24. Before we address the Municipalities' first argument, we note that the Municipalities aim their argument at the wrong target. WISCONSIN STAT. § 803.09(1) describes the inadequate representation

---

[15] The Municipalities take this quote from Stacy Forster, *Domestic Partner Benefits Fight Grows; Legislature to Hire Pro Bono Firm to Intervene*, MILWAUKEE J. SENTINEL, May 19, 2005, at B1.

prong of the intervention of right test as requiring a potential intervenor to show that its interest is inadequately represented "by existing parties." The attorney general is plainly not a party in this case; therefore, the Municipalities' argument is without merit on its face, at least to the extent that the Municipalities contend their interests cannot be adequately represented by the attorney general rather than by the named defendants in this case. Nonetheless, we consider the Municipalities' argument because a charge that an attorney general is conflicted in her loyalties to the point of disregarding her duties and the law is not to be taken lightly. We therefore carefully examine the three instances the Municipalities contend demonstrate the attorney general's inability to adequately represent their interests in this case.

¶ 25. We start with the presumption that the attorney general will properly perform her duties. *See White House Milk Co.*, 275 Wis. at 250.[16] In *White House Milk Co.*, a dairy producer sought a declaratory

---

[16] The dissent contends the supreme court's inadequate representation analysis in *White House Milk Co. v. Thomson*, 275 Wis. 243, 81 N.W.2d 725 (1957), should not be applied here because at the time the case was decided "there was no provision for intervention as of right in Wisconsin," and therefore the standard of review was for an abuse of discretion, not de novo, which is the standard we apply here. Dissent, ¶ 49. This is a distinction without a difference. First, there is nothing in the supreme court's inadequate representation analysis indicating the court would arrive at a different conclusion today under the intervention of right statute with its concomitant de novo standard of review. Second, the dissent fails to provide any supportable reason why the differences he points to matter. Moreover, *White House* continues to be the law. *See, e.g., City of Madison v. Wisconsin Employment Relations Comm'n*, 2000 WI 39, ¶ 11 nn.8, 11, 234 Wis. 2d 550, 610 N.W.2d 94; *North*

judgment that a state law generally prohibiting intrastate price disparities for certain dairy products was unconstitutional. *Id.* at 246. A dairy co-operative sought to intervene, arguing that the attorney general would not diligently defend the statute's constitutionality, citing both the attorney general's decision not to enforce the statute on an occasion six years prior and a letter the attorney general wrote at that time stating it was the attorney general's opinion that the law was unconstitutional. *Id.* at 245, 249–50. Referring to 52 AM. JUR. TAXPAYERS' ACTIONS § 26 (1944) in support,[17] the supreme court concluded that even in the face of this evidence showing the attorney general's belief that the law was unconstitutional, it "must presume that the [attorney general] will perform his duty until such time as we are presented with convincing evidence to the contrary." *Id.* at 250.

■

¶ 26. Regarding Lautenschlager's statements at the election debate on October 25, 2002, the Municipalities quote her as saying that "part of the job of the attorney general is to ensure that the civil rights of all individuals throughout the state are recognized and are supported. And I believe that we need to do this [create

*Side Bank v. Gentile*, 129 Wis. 2d 208, 215–16, 385 N.W.2d 133 (1986); *Bence v. City of Milwaukee*, 84 Wis. 2d 224, 234, 267 N.W.2d 25 (1978).

[17] The following quote was taken from 52 AM. JUR. TAXPAYERS' ACTIONS § 26 (1944):

> Public officers are always presumed, in the absence of any showing to the contrary, to be ready and willing to perform their duty; and until it is made to appear that they have refused to do so, or have neglected to act under circumstances rendering this equivalent to a refusal, there is no occasion for the intervention of the citizen for the protection of himself and others similarly situated.

civil unions]."[18] This statement fails to evince any inclination by the attorney general to switch "loyalties" or to fail in her duty to defend the statutes being challenged in this case. Rather, the statements express only general support for civil rights and civil unions, not for providing benefits in the ways the plaintiffs in this case seek. Nothing in the quoted language addresses the statutes being challenged in this case.

¶ 27. Similarly, the attorney general's statement at the Madison Gay Pride Rally does not support the Municipalities' contention that the attorney general cannot adequately represent their interests. We note that in her statement, the attorney general voiced only general support for civil rights without addressing the issues specific to this case. At the rally, the attorney general stated:

> [Describing a conversation with her son] I said [to the son], "You are doing a parade," and he said, "Yes, I am." And I said, "So why did you want to do this parade?" and he looked at me, as he was about to start law school I might add, and said, "Mom, this is the Civil Rights movement of my generation." Indeed, he was right . . . . Today's parade is a recognition that in this great nation people ought to be treated fairly no matter who they are. No matter what color they are. No matter what their religion. No matter if they are rich or poor, or no matter if they are gay or straight. This is a fundamental issue, and this is an issue about which we will all be on the battlegrounds . . . . [T]he reality is this is something

---

[18] According to the Municipalities, this web page could be accessed through the following URL as of May 26, 2005: *www.actionwisconsin.org/elect02update.html.* As the circuit court noted, DETF has not objected to or disputed the accuracy of this description of Lautenschlager's statements.

912

where we need to speak out. Where we cannot have our voices silenced and where we need to find the courage not to be timid. Not to play it safe, but to say indeed rights for all are human rights, and human rights are deserved by all no matter if you're gay.

Nothing in the attorney general's comments addresses the litigation before us nor conveys anything more specific about her viewpoint than a general support for civil rights for all persons, regardless of religion, race, wealth or sexual orientation, similar to her statements during the October 25, 2002 debate generally supporting the concept of civil unions.

¶ 28. In addition, a careful look at the Gay Rights Rally transcript reveals that there was not necessarily a close nexus in either timing or context between the statements of the Helgeland plaintiffs and attorney, and that of the attorney general. The transcript of the Gay Rights Rally shows that the rally consisted of statements from five speakers, divided into two segments. The first half of the rally consisted of the speeches by the Helgeland plaintiffs and attorney. Next came a clear break between segments, and a segue by the announcer, who provided the following bridge between segments: "Well, on a different note, the next two speakers are two amazing women who both broke barriers to be here," indicating a transition to another category of speakers: female public officials. Then came the statements of Attorney General Peg Lautenschlager and Congresswoman Tammy Baldwin. There is nothing in the timing or context of Lautenschlager's statements indicating support for plaintiffs' claims in this litigation or an inability to defend against the plaintiffs' constitutional challenge.

¶ 29. We conclude that neither the substance nor the timing of Lautenschlager's remarks serves to rebut

the presumption that an attorney general will properly perform her duties.[19] *See White House Milk Co.*, 275 Wis. at 250. In *White House Milk Co.*, the attorney general expressed his opinion that a law was unconstitutional and had previously declined to take action to enforce that law, but the supreme court nonetheless found that the presumption he would perform his duty had not been rebutted. *Id.* at 249–50. In the present case, there is no history of the attorney general either addressing the constitutionality of the statutes in question or refusing to enforce them. The attorney general's broad statements of support for civil rights are both benign on their face and, in contrast with the letter sent by the attorney general in *White House Milk Co.*, devoid of any disparaging reference to the statutes she is charged with defending. Her comments consequently do not establish inadequate representation of the Municipalities.

¶ 30. Regarding the Municipalities' description of the attorney general's spokesperson's statement to the newspaper as reflecting an abandonment of the precedent of *Phillips*, the Municipalities' concerns find no support in the record, considering the attorney general's actual conduct in this action. DETF's motion

---

[19] The dissent would grant the Municipalities' motion to intervene as a matter of right based on the Municipalities' subjective belief that the attorney general will not properly and professionally fulfill her duties as attorney general. Dissent, ¶ 57. As we explained, the Municipalities improperly point to the attorney general as the target for their inadequate representation argument, when indeed the Municipalities should focus their argument on DETF, a party in this action. The dissent appears to fall into the same trap by focusing on the attorney general rather than on the DETF in arguing that the Municipalities should be made a party in this action.

for judgment on the pleadings, in which the attorney general specifically invokes *Phillips* as controlling the case at bar and requiring the dismissal of Helgeland's claims, plainly demonstrates the attorney general's consensus with the Municipalities regarding the precedential strength of *Phillips* in this case.

¶ 31. We also reject the Municipalities' argument that the DETF cannot adequately represent them because they are differently situated, with the Municipalities having a policymaking prerogative while the DETF administers the policies decided by the Legislature. This argument is essentially the same as the Legislature's public policy prerogative argument. For the reasons we have already explained, we similarly conclude that any policy prerogative of the Municipalities does not qualify as an "interest" for purposes of mandatory intervention and thus we need not consider it in the discussion of adequate representation. *See Armada Broad., Inc.*, 183 Wis. 2d at 476; *Sewerage Comm'n*, 104 Wis. 2d at 189.

¶ 32. The Municipalities next argue that "critical defenses are absent from Defendant's pleadings and conduct of the litigation to date," and that the motion for judgment on the pleadings is "reckless" because it "risks the Wisconsin Supreme Court reaching the ultimate merits of Plaintiffs' claims . . . without presenting *any* factual basis for sustaining legislative discretion under the deferential rational basis standard." We are not persuaded.

¶ 33. The attorney general has chosen a procedure to obtain a dismissal of the case through a legal ruling on the statutes' constitutionality—based on *Phillips*—which does not require additional facts. The

attorney general's choice of this particular strategy does not indicate she has abandoned other effective defenses available to the defendants. If the circuit court determines that the constitutionality of the statutes cannot be determined on the pleadings, it will deny the motion and the litigation will continue. DETF will then have the opportunity to conduct discovery. It appears that the Municipalities' argument here is based on a dispute concerning trial strategy, which is not a basis for determining that the attorney general's representation is not adequate. *See Stadin v. Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir. 1962) ("Mere difference of opinion among attorneys is not of itself inadequate representation within the meaning of the Rule. If it were, intervention of right would become almost automatic."). Similarly, the Municipalities' disagreement with the attorney general's strategy rests on the contention that the Municipalities can bring additional arguments to the table, a basis for intervention that is insufficient under the legal standard. *See Environmental Defense Fund*, 631 F.2d at 740.

¶ 34. Finally, the Municipalities assert that they would be inadequately represented in the remedy phase because, should Helgeland win this case and receive the requested declaratory judgments and injunctive relief, "[c]rafting and implementing such a massive, quasi-legislative injunction would be irresponsible without extensive participation of the very municipalities and employees whose rights and obligations will be affected." They argue that a judgment for Helgeland would force "hundreds or thousands of municipalities [to] conform to principles in the face of multiple collective bargaining agreements, duly adopted budgets, revenue limitations, vested employee rights, etc."

¶ 35. The Municipalities overstate the potential direct impact on their benefit plans and the appropriateness of their helping craft the remedy in this case. Their argument that Helgeland seeks a "massive, quasi-legislative injunction" potentially affecting the collective bargaining agreements and budgets of "hundreds or thousands of municipalities" is unsupported by the record; therefore we need not address such arguments further. Even those Municipalities which likely have direct interests in this case due to their DETF health plans have not adequately explained what remedies a court could order in this case that would directly affect them other than requiring same-sex domestic partners to be included within the meaning of "dependent" in the DETF statutes and administration thereof. The fact that the Municipalities might be affected by the extended DETF coverage does not require their participation in the court's crafting of the requested declaratory and injunctive relief. For all the reasons we have explained, we conclude that DETF's representation is adequate, and thus the circuit court properly denied the Municipalities' motion for intervention of right.

## II. PERMISSIVE INTERVENTION

### A. *Legislature*

¶ 36. The Legislature next argues that the circuit court erred by not granting its motion for permissive intervention. WISCONSIN STAT. § 803.09(2) governs permissive intervention and states in relevant part:

> Upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common .... In exercising its discretion the court

917

shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In its motion to intervene, the Legislature argued that it would address questions of law and fact that were in common with the main action and described a number of issues raised by the case—such as whether *Phillips* is controlling precedent. It did not identify any defense it had to any claim, although in its appellate brief it describes these issues as "defenses."

¶ 37. The circuit court's permissive intervention analysis began with the court asking, "Whose job is it to defend the laws of Wisconsin?"[20] Answering its own question, the court noted that by statute the department of justice provides all legal assistance to DETF, and the court then concluded that "[t]here is clearly evident intent that defending the constitutionality of Wisconsin law be the duty of the Attorney General," and not that of the Legislature. The Legislature argues this reasoning was erroneous, having "nothing to do" with the permissive intervention factors.

¶ 38. Whether to grant a motion to permissively intervene under Wis. Stat. § 803.09(2) is left to the sound discretion of the circuit court. *Milwaukee Bd. of Sch. Dirs. v. Milwaukee Teachers' Edu. Ass'n*, 143 Wis. 2d 591, 600, 422 N.W.2d 149 (Ct. App. 1988). However, we review de novo whether the legal requirements of the statute are met. *See Employee Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) ("[w]e review whether the legal requirements [of permissive intervention under-

---

[20] Whether the Municipalities' motion to intervene was timely is not in dispute. Therefore we need not address this issue.

Federal] Rule 24(b) have been met de novo, and the discretionary decision to allow intervention for abuse of discretion") (citing *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 472 (9th Cir. 1992), *cert. denied,* 506 U.S. 868 (1992)). In this case a resolution of whether the circuit court properly denied the Legislature's motion for permissive intervention depends upon a construction of the statutory requirement that "a movant's claim or defense and the main action have a question of law or fact in common."

¶ 39. WISCONSIN STAT. § 803.09(2) is part of our rules of civil procedure. We apply rules of statutory interpretation when interpreting rules of civil procedure. *Jadair Inc. v. United States Fire Ins. Co.,* 209 Wis. 2d 187, ¶ 8, 562 N.W.2d 401 (1997). As with statutory interpretation, rule interpretation is a question of law, which we review de novo. *Id.* We first look to the plain language of the rule and if the intent of the supreme court is manifest, we must give effect to this intent. *Id.,* ¶ 9.

¶ 40. We focus on the meaning of "defense." As noted above, the Legislature's position is that the issues they wish to raise are "defenses" within the meaning of the statute. "Defense" is a term that has a legal meaning and we may consult Black's Law Dictionary to determine its common legal meaning. *See State v. Ellis H.,* 2004 WI App 123, ¶ 15, 274 Wis. 2d 703, 684 N.W.2d 157. Black's Law Dictionary defines "defense" as "[a] defendant's stated reason why the plaintiff or prosecutor has no valid case, especially, a defendant's answer, denial or plea[:] . . . 'that which is alleged by a party proceeded against in an action or suit, as a reason why the plaintiff should not recover or establish that which

he seeks by his complaint or petition.' " BLACK'S LAW DICTIONARY 451 (8th ed. 2004). Thus, "defense" is commonly understood as a legal term to mean not just anyone's arguments, but the arguments or allegations of a person proceeded against to defeat what the claimant seeks. In the context of WIS. STAT. § 803.09(2), "defense" conveys that the person seeking to intervene, although not named as a defendant, *could be* a defendant to a claim in the main action or a defendant to a similar or related claim.

¶ 41. WISCONSIN STAT. § 803.09(3) supports this construction of "defense." *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes"). This subsection requires that the motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought . . . ." This conveys that the "claim" or "defense" is more than arguments or issues a non-party wishes to address and is the type of matter presented in a pleading—either allegations that show why a party is entitled to the relief sought on a claim or allegations that show why a party proceeded against is entitled to prevail against the claim.

¶ 42. Federal cases discussing the identically worded federal rule in all material respects also support this meaning of "defense." *See Diamond v. Charles*, 476 U.S. 54, 76–77 (1986) (O'Connor, J., concurring) ("The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit . . .[;] it . . .

require[s] an interest sufficient to support a legal claim or defense . . . ."); *Laube v. Campbell*, 215 F.R.D. 655, 659 (M.D. Ala. 2003) (adopting Justice O'Connor's reasoning); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin*, 116 F.R.D. 608, 611–12 (W.D. Wis. 1987) (denying permissive intervention because the movant "does not articulate a claim or defense per se, but rather recites a number of aspects of its interest in the [action]"). Federal courts have allowed permissive intervention even though the movant does not have a "claim" or "defense" when the movant seeks access to materials shielded by a protective order; but they do so after recognizing that the primary purpose of the rule is to allow persons to become parties in order to litigate their claims or defenses on the merits. *See Beckman Ind us., Inc.*, 966 F.2d at 472–73; *see also Equal Employment Opportunity Comm'n v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1045–46 (D.C. Cir. 1998) (the rule's "apparent goal [is] disposing of related controversies together").

¶ 43. We conclude that the arguments and issues the Legislature wishes to raise to defeat Helgeland's claims do not constitute a "defense" within the meaning of Wis. Stat. § 803.09(2). Therefore the circuit court did not err in denying its motion for permissive intervention. We recognize that the circuit court apparently denied the motion for a different reason. Based on the Legislature's assertion in its motion that it has a significant interest in defending its policy decision not to provide domestic partner benefits, the circuit court apparently reasoned that the Legislature wanted to "defend" the statutes in the same way the attorney general would, and that providing such a defense was not the Legislature's duty. However, on our de novo review of the statutory require-

ments for permissive intervention, we may affirm the circuit court's denial of the motion on other grounds. *See State v. Holt*, 128 Wis. 2d 110, 125, 382 N.W.2d 679 (Ct. App. 1985) ("An appellate court may sustain a lower court's holding on a theory or on reasoning not presented to the lower court.").

### B. Municipalities

¶ 44. In its discussion of the Municipalities' motion for permissive intervention, the circuit court concluded:

> There has not been any showing that permitting the Legislature to intervene is likely to cause any significant delay but that is not the situation as to the municipal intervenors. The municipal intervenors suggest that this action should be converted into a class action, potentially broadening the scope. It has been asserted that this will inevitably cause some degree of delay and the court accepts this as a probability.

As we have discussed, whether to grant a motion to permissively intervene under Wis. Stat. § 803.09(2) is left to the sound discretion of the circuit court. *Milwaukee Bd. of Sch. Dirs.*, 143 Wis. 2d at 600. We conclude that the circuit court's denial of the Municipalities' motion for permissive intervention, based on the delay associated with a proposed certification for class action,[21] was not an erroneous exercise of its discretion. Although the Municipalities have not yet formally moved

---

[21] Whether the Municipalities had a common claim or defense within the meaning of Wis. Stat. § 803.09(2) has not been raised as an issue in this appeal. Like the circuit court's analysis, our analysis consequently moves directly to the second prong of the permissive intervention test under § 803.09(2): whether the Municipalities' intervention would unduly delay or prejudice the

for class certification, they admit suggesting that course of action, and the court reasonably concluded this step would cause delay. Furthermore, the Municipalities argue for permissive intervention on the basis that "mere addition of a party is not prejudice," but the text of § 803.09(2) clearly provides that undue delay, not just undue prejudice, constitutes appropriate grounds for a court to deny a motion for permissive intervention. Even the court's consideration of a class certification motion will likely take substantial time and cause unnecessary delay in this case. As such, the court properly exercised its discretion in determining that the Municipalities' stated intent to seek class certification provides a sufficient basis for denying their motion for permissive intervention.

## III. JOINDER

■■■

¶ 45. The Municipalities insist that they meet the requirements to be joined as necessary and indispensable parties in this action sua sponte under WIS. STAT. §§ 803.03(1)(b)[22] and

rights of the original parties (and, for purposes of our review, whether the court's affirmative answer to that question was reasonable).

[22] WISCONSIN STAT. § 803.03(1) states in relevant part:

A person who is subject to service of process shall be joined as a party in the action if:

. . . .

(b) The person claims an interest relating to the subject of the action, and is so situated that the disposition of the action in the persons absence may:

1. As a practical matter impair or impede the person's ability to protect that interest; or

806.04(11).[23] We conclude that § 803.03(1)(b) does not require that the Municipalities be joined in this lawsuit.

■

¶ 46. The Municipalities argue that they are necessary parties under Wis. Stat. § 803.03(1)(b)1. because of the prejudicial effect a judgment in Helgeland's favor would have on them. The Municipalities do not specify the ways in which they would be prejudiced if not joined in this action; we presume that they implicitly incorporate their previous arguments on how they would be prejudiced if not permitted to intervene as a matter of right. The inquiry of whether a movant is a necessary party under § 803.03(1)(b)1. is in all significant respects the same inquiry under Wis. Stat. § 803.09(1) as to whether a movant is entitled to intervene in an action as a matter of right, including the factor of whether the interest of a movant is adequately represented by existing parties. *Dairyland Greyhound Park, Inc. v. McCallum*, 2002 WI App 259, ¶ 10 and n.6, 258 Wis. 2d 210, 655 N.W.2d 474. Having concluded that the Municipalities were properly denied the right to intervene in this case, we therefore conclude that the Municipalities are not necessary parties under § 803.03(1)(b).[24]

2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

[23] Wisconsin Stat. § 806.04(11) provides in relevant part, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding."

[24] The Municipalities' argument that Wis. Stat. § 806.04(11) requires their joinder is not fully developed. We need not consider this argument any further. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

## CONCLUSION

¶ 47. Regarding the motions for intervention as a matter of right, we conclude that the Legislature has presented no sufficiently related interests potentially impaired by the declaratory judgment action and that any sufficiently related interests of the Municipalities are adequately represented. Regarding the motions for permissive intervention, we conclude that the circuit court properly denied the Legislature's motion because the Legislature did not have a "defense" within the meaning of WIS. STAT. § 803.09(2). We also conclude that the court properly exercised its discretion in deciding that allowing the Municipalities to intervene would result in undue delay. Finally, we conclude that the Muncipalities are not necessary parties within the meaning of WIS. STAT. § 803.03(1)(b), and therefore were properly not joined under that statute. We therefore affirm the circuit court's denial of the Legislature's and Municipalities' motions to intervene.

*By the Court.*—Order affirmed.

¶ 48. DYKMAN, J. (*concurring in part; dissenting in part*). This is an intervention case. It has nothing to do with whether the State or municipalities should or should not be required to provide married employee benefits to unmarried employees in life partnerships. Unfortunately, however, the interesting and challenging issues concerning intervention will probably be lost in the desire to portray these opinions as something they are not.

¶ 49. The majority starts with *White House Milk Co. v. Thomson*, 275 Wis. 243, 81 N.W.2d 725 (1957), as the keystone for its conclusion that the municipalities are not entitled to intervention as of right. Majority,

925

¶ 25. But *White House* did not interpret Wis. Stat. § 803.09(1) (2003–04)[1] (Wisconsin's intervening-as-of-right statute). Prior to the adoption of our present rule on January 1, 1976, there was no provision for intervention as of right in Wisconsin. *See* Judicial Council Committee's Note, 1974, Wisconsin Rules of Civil Procedure, 67 Wis. 2d 651.[2] When the *White House* court determined that a cooperative was not entitled to intervention, it was considering permissive intervention under Wis. Stat. § 260.19 (1955). Its standard of review was not de novo, the test we use today for intervention as of right, *M&I Marshall & Ilsley Bank v. Urquhart Cos.*, 2005 WI App 225, ¶ 6, 287 Wis. 2d 623, 706 N.W.2d 335, but abuse of discretion, *White House*, 275 Wis. 2d at 248. The Court said:

> Nevertheless, even if it were conceded to be a proper party, the co-operative cannot prevail on this appeal without demonstrating that the trial court abused its discretion in denying the application for intervention. *Schatzman v. Greenfield* (1956), 273 Wis. 277, 281, 77 N.W. (2d) 511; *Fish Creek Park Co. v. Bayside* (1956), 273 Wis. 89, 93, 76 N.W. (2d) 557; and *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 98, 219 N.W. 428.

*White House*, 275 Wis. 2d at 248. We cannot know what the *White House* court would have done with our present statute using our present standard of review.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The Judicial Council's Note was referring to Wis. Stat. § 260.205 (1973), which differs from Wis. Stat. § 260.19 (1955). Still, using the clear standard of review the court used in *White House*, it is apparent that, until 1976, Wisconsin did not recognize intervention as of right.

¶ 50. The reason this matters is that deferential review avoids the question of what an appellate court would do if it were free to do so. We and the supreme court are required to affirm a trial court if the trial court's decision falls within a broad spectrum of possible decisions, even if we disagree with the trial court. Discretion has been described as "a limited right to be wrong." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995) (citation omitted). Thus, we might well affirm a trial court when we are reviewing for erroneous exercise of discretion but reverse if deciding an issue de novo. To me, that is a significant difference.

¶ 51. I recognize the three cases the majority cites for its conclusion that "*White House* continues to be the law." Majority, ¶ 25 n.16 (citing *City of Madison v. Wisconsin Employment Relations Com'n*, 2000 WI 39, ¶ 11 nn.8, 11, 234 Wis. 2d 550, 610 N.W.2d 94; *North Side Bank v. Gentile*, 129 Wis. 2d 208, 215–16, 385 N.W.2d 133 (1986); *Bence v. City of Milwaukee*, 84 Wis. 2d 224, 234, 267 N.W.2d 25 (1978)). But in *City of Madison*, the issue was whether a non-party could intervene in an appeal after the time for filing a notice of appeal had passed. Whether the intervention was permissive or as of right was not relevant. The court's remand was: "The court of appeals on remand must determine whether the PFC has the right to intervene in this appeal, or if the PFC may permissively intervene." *City of Madison*, 234 Wis. 2d 550, ¶ 11. *North Side Bank* interpreted Wis. Stat. § 806.04(11) (1983–84), the Uniform Declaratory Judgments Act. The court did not mention Wis. Stat. § 803.09, the then and present intervention statute. The issue in *North-Side Bank* was whether a bankruptcy trustee could pursue a declaratory judgment action without all of the bankrupts' creditors being joined in the action. *Bence*,

927

too, involved a joinder issue under § 806.04(11) (1977). As in *North Side Bank*, the court did not cite § 803.09. None of the three cases the majority relies upon for its conclusion that "*White House* continues to be the law" support its decision to rely on *White House*. *White House* may be precedential for issues not involved here, but it cannot be read to comment on intervention as of right, a provision not adopted in Wisconsin until 1976.

¶ 52. For these reasons, I would not rely on *White House*. Instead, I would use Wisconsin opinions interpreting our present statute, and, because of the similarity between WIS. STAT. § 803.09(1) and FED. R. CIV. P. 24(a)(2), appropriate federal appellate decisions. I begin with a State case, *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 601 N.W.2d 301 (Ct. App. 1999).

¶ 53. In *Wolff*, the trial court denied the Town of Jamestown's motion to intervene in a lawsuit between Grant County and the Wolffs. *Id.* at 740. The Town asserted that the County might settle the case in which the Wolffs sought a conditional use permit in a way that might increase costs for the Town. *Id.* at 747–49. We identified *Wolff* as an intervention-as-of-right case under WIS. STAT. § 803.09(1), subject to a de novo review. *Wolff*, 229 Wis. 2d at 742–43. I use the same standard of review here because this case is also an intervention-as-of-right case.

¶ 54. In *Wolff*, we recognized that there was no precise formula for determining whether a potential intervenor meets the requirements of WIS. STAT. § 803.09(1). *Id.* at 742. We are to evaluate the motion "practically, not technically, with an eye toward disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 742–43 (citation omitted). We are to

928

consider the impact on the original parties as a factor in reaching our decision. *Id.* at 743.

¶ 55. I agree with the majority that at least three of the eight proposed intervenor municipalities have interests that fulfill the first three elements of WIS. STAT. § 803.09(1). And I agree that *Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 476, 516 N.W.2d 357 (1994), sets out the factors we should use to determine whether the State adequately represents the municipalities. Those factors are: (1) Is there a showing of collusion between the representative and the opposing party? (2) Is the representative's interest adverse to that of the proposed intervenor? (3) Has the representative failed in the fulfillment of his or her duty? *Id.*

¶ 56. The test for inadequate representation is not precise. *Wolff*, 229 Wis. 2d at 742. *Armada* itself relied on *Milwaukee Sewerage Comm'n v. DNR*, 104 Wis. 2d 182, 189, 311 N.W.2d 677 (Ct. App. 1981), which in turn relied on federal precedent. Federal courts have recently explained that the "trilogy of grounds for rebutting the adequate representation presumption is only illustrative." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) (citation omitted). I conclude that WIS. STAT. § 803.09(1), like Rule 24(a)(2) of the Federal Rules of Civil Procedure, should be interpreted as including illustrative examples of the grounds required to rebut the presumption of adequate representation.

¶ 57. Here, the municipalities express a fear that the attorney general, because she has expressed opinions related to the issue on appeal, will not pursue this case with the vigor and enthusiasm they expect of her. They would raise issues that she has not raised or presumably will not raise. The majority writes several pages of explanation in an attempt to convince the

929

municipalities that their fears are not reality based. This attempt is doomed to failure because the municipalities know in their municipal hearts that this cannot be true. The municipalities are probably wrong; the attorney general is a professional who hires professional assistants who are not going to compromise their principles by making weak arguments so that they will lose the case. The judges or justices who ultimately decide this case on the merits will be influenced by the wording of statutes, constitutions and by case law, not by artful briefs and carefully crafted oral argument. But the municipalities do not believe that. They believe that only if their attorney is allowed to make their argument will the case be won. There is no way I nor anyone else can change this belief.

¶ 58. The majority claims that only the conduct of a party and not that of the party's attorney may be analyzed to determine whether an original party to the litigation can adequately represent the intervening party's interests. Majority, ¶ 24. Were that true, there would be no need for the majority to spend six paragraphs explaining why the attorney general's comments were not really what they seemed to be. Majority, ¶¶ 25–30. Were that true, the majority would have disposed of the issue by writing that the attorney general is not a party, and therefore her statements are irrelevant. The problem with the majority's criticism is twofold. First, Wis. Stat. § 803.09(1) does not refer only to parties. In relevant part, it reads, "unless the movant's interest is adequately represented by existing parties." The operative word is "represented."

¶ 59. Attorneys general only become involved in litigation if they are required to do so or choose to do so. The conduct of the litigation is uniquely in the hands of the attorney general. This is much different from the

930

usual attorney-client relationship where the attorney actively seeks the instructions of the client, and pursues the litigation according to the wishes of the client, whether the attorney agrees with those wishes or not. Usually, the person paying the piper calls the tune. But not so in cases like this one. The attorney general is required to defend the statute at issue, but how she does so and what issues she raises or does not raise are up to her. She determines how the case will be defended, for better or worse. She is entitled to send to court the most experienced or least experienced assistant attorney general.[3] An attorney general is much more than a hired gun.

¶ 60. The second problem with the majority's assertion that we may not analyze the attorney general's comments is that the test for intervention as of right is broad. As I initially noted, there is no precise formula for analyzing a proposed intervention under WIS. STAT. § 803.09(1). We are to make a practical, not technical, analysis, and we favor intervention so that as many apparently concerned persons can participate as possible. The only limits are efficiency and due process. *Wolff*, 229 Wis. 2d at 742–43. I see no efficiency or due process problems here. For me, it is practical to allow the municipalities to participate here because it just does not hurt anything. Trying to keep interested parties out of a lawsuit is like trying to teach a pig to sing. All that does is waste your time and annoy the pig.[4] If a litigant is able to prevent intervention, all that happens is a request to file a brief amicus, which is

---

[3] This sentence does not refer to any attorney litigating this case. It is just part of an analysis of an issue.

[4] An admonition commonly attributed to Robert Heinlein in *Time Enough For Love.*

931

routinely granted. The parties have already wasted more time arguing about whether the municipalities should be allowed to intervene than they would have expended had the municipalities been allowed to intervene in the first place. At least as to the municipalities, this case would be here on the merits rather than returning to the trial court. The result is that we will be reviewing the merits of this case in 2007 or 2008, not today.

¶ 61. A good way to create mistrust is to deny participation in government. Of course, there is an endpoint to participation; lawsuits cannot be open to whoever wants to participate or only chaos wins. But here, the only factor keeping the municipalities from participation as a party is the majority's conclusion that, despite statements by the State's attorney which at least raise doubts, the statements do not amount to much. Perhaps they do not, but I believe that there is a reasonable perception that the attorney general has taken a position contrary to the one she advocates on the merits of this litigation. Given the de novo standard of review we use in cases like this, the lack of a precise formula to decide cases like this, the supreme court's endorsement of a "minimal showing" by proposed intervenors, the lack of impact on the existing parties and considering the matter practically and not technically with an eye toward maximizing participation, I conclude that I would allow the municipalities to intervene here. Accordingly, I respectfully dissent to the majority's opinion which holds otherwise.

¶ 62. But my observation that there must be an endpoint to intervention applies to the legislature's motion to intervene. We are asked to hold that whenever the legislature wishes to advocate a position on legislation, it is entitled to party status as a matter of

right. While, constitutional considerations aside, that might be how Wis. Stat. Rule 809.03(1) could be written, that is not how it is written. Courts are not in the business of legislating, and legislatures should generally not be litigating. Courts determine the meaning of legislation and constitutions, and legislatures change legislation and initiate constitutional changes if they do not agree with courts' views on these subjects. That system has worked reasonably well for a long time, most of the time, and I, at least, see no need for a change. Accordingly, I concur with the majority's rationale and conclusion that the trial court correctly denied party status to the legislature.